THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| METALLICA<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A<br><br>Defendants. | Civil Action No.: 1:23-cv-15181<br><br>Honorable Judge Thomas M. Durkin<br><br>Magistrate Judge Keri L. Holleb Hotaling |

**ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant viwishs and Defendant luaulooks (collectively "Defendants"), through their undersigned counsel, and in answer to the Complaint filed by the Plaintiff, state as follows:

**I. JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

   ***ANSWER:*** Defendants admit that the Complaint purports to state a claim arising under the Lanham Act, Title 35 of the United States Code, and that such a claim, if proper, would arise within this Court's subject matter jurisdiction.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because Defendants structure their business

activities so as to target consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the aliases identified on Schedule A attached hereto (the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell products using infringing and counterfeit versions of Plaintiff's federally registered trademarks (collectively, the "Unauthorized Products") to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the state of Illinois.

**ANSWER:** Defendants deny the allegations in paragraph 2 except that venue is proper in this judicial district, Defendants each operate an Internet store that are accessible by residents of Illinois, and Defendants accept U.S. dollars.

## II. INTRODUCTION

3. Plaintiff filed this case to prevent e-commerce store operators who trade upon Plaintiff's reputation and goodwill from further selling and/or offering for sale Unauthorized Products. Defendants create e-commerce stores under one or more Seller Aliases and then advertise, offer for sale, and/or sell Unauthorized Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share identifiers, such as design elements and similarities of the Unauthorized Products offered for sale, establishing that a logical relationship exists between them, and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants take advantage of a set of circumstances, including the anonymity and mass

reach afforded by the Internet and the cover afforded by international borders, to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under one or more Seller Aliases to conceal their identities, locations, and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect consumers from purchasing Unauthorized Products over the Internet. Plaintiff has been, and continues to be, irreparably damaged through consumer confusion and dilution of its valuable trademarks because of Defendants' actions and therefore seeks injunctive and monetary relief.

*ANSWER:* Defendants deny the allegations in paragraph 3.

### III. THE PARTIES

4. Plaintiff, Metallica, is a California general partnership having its principal place of business in California and is the owner of the trademark rights asserted in this action.

   *ANSWER:* Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 4, and therefore deny those allegations.

5. Plaintiff is a recording, licensing, and publishing company owned by the members of Metallica, the long recognized and acclaimed American heavy-metal band. Metallica, one of the biggest selling acts in American history, was formed in 1981 by vocalist/guitarist James Hetfield and drummer Lars Ulrich, and currently includes guitarist Kirk Hammett and bassist Robert Trujillo. The band has released a multitude of albums, including famous albums Metallica and Master of Puppets, that have sold over 125 million copies worldwide. Metallica also has a new album, 72 Seasons, set for release in April 2023.

   *ANSWER:* Defendants lack knowledge or information sufficient to form a belief as to the

allegations in paragraph 5, and therefore deny those allegations.

6. Due to its massive success, Metallica has conducted several world tours spanning across the globe, including a 2013 performance in Antarctica that cemented Metallica as the first band to ever play on all seven continents. Metallica has also won countless awards, including (1) numerous Grammys across the categories of Best Metal Performance, Best Rock Instrumental Performance, and Best Recording Package; (2) two American Music Awards for Favorite Heavy Metal/Hard Rock Artist; (3) five Billboard Music Awards, including one for Top Rock Album for the album Hardwired...To Self-Destruct, (4) iHeartRadio Music Awards for Rock Album and Rock Artist of the Year, and (5) seven British Kerrang! Awards, including Best Band on the Planet in 2004. Metallica's international recognition culminated in their induction into the American Rock and Roll Hall of Fame in 2009. With tour dates already set for 2023 and 2024, Metallica's impact on music and culture continues to be a dominating force in rock markets around the globe.
**_ANSWER:_** Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 6, and therefore deny those allegations.

7. With a strong fan-base, Plaintiff markets and sells a variety of Metallica-branded products, including clothing, posters, bags, stickers, banners, beverage ware, and other merchandise bearing Plaintiff's trademarks (collectively, "Plaintiff's Products"). Plaintiff's Products have become enormously popular and even iconic, driven by Plaintiff's quality standards and innovative designs. Among the purchasing public, Plaintiff's Products are instantly recognizable as such. Plaintiff's Products are distributed and sold to consumers by Plaintiff and its licensees through authorized retailers throughout the United States and through Plaintiff's website, www.metallica.com.

>   ***ANSWER:*** Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 7, and therefore deny those allegations.

8. Plaintiff has used the METALLICA trademark, and other trademarks, for many years and has continuously sold products under its trademarks ("Plaintiff's Trademarks"). As a result of this long-standing use, strong common law trademark rights have amassed in Plaintiff's Trademarks. Plaintiff's use of the marks has also built substantial goodwill in Plaintiff's Trademarks. Plaintiff's Trademarks are famous marks and valuable assets of Plaintiff. Plaintiff's Products also typically include at least one of Plaintiff's Trademarks.

    ***ANSWER:*** Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 8, and therefore deny those allegations.

9. Plaintiff's Trademarks are registered with the United States Patent and Trademark Office and are included below.

    [Registration Nos., Trademarks, Registration Dates, Goods and Services]

    ***ANSWER:*** Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 9, and therefore deny those allegations.

10. The U.S. registrations for Plaintiff's Trademarks are valid, subsisting, and in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065. The registrations for Plaintiff's Trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use Plaintiff's Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for Plaintiff's Trademarks are attached hereto as Exhibit 1.

    ***ANSWER:*** Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 10, and therefore deny those allegations.

11. Plaintiff's Trademarks are exclusive to Plaintiff and are displayed extensively on Plaintiff's Products and in marketing and promotional materials. Plaintiff's Trademarks are also distinctive when applied to Plaintiff's Products, signifying to the purchaser that the products come from Plaintiff, or its licensees, and are manufactured to Plaintiff's quality standards. Whether Plaintiff manufactures the products itself or contracts with others to do so, Plaintiff has ensured that products bearing Plaintiff's Trademarks are manufactured to the highest quality standards.

    *ANSWER:* Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 11, and therefore deny those allegations.

12. Plaintiff's Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. The success of Metallica, in addition to the marketing of Plaintiff's Products, has enabled the Metallica brand to achieve widespread recognition and fame and has made Plaintiff's Trademarks some of the most well- known marks in the music industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Metallica brand have made Plaintiff's Trademarks valuable assets of Plaintiff.

    *ANSWER:* Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 12, and therefore deny those allegations.

13. Products bearing Plaintiff's Trademarks have been the subject of substantial and continuous marketing and promotion. Plaintiff has marketed and promoted, and continues to market and promote, Plaintiff's Trademarks in the industry and to consumers through traditional print media, authorized retailers, social media sites, point of sale material, and its website, www.metallica.com.

>   ***ANSWER:*** Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 13, and therefore deny those allegations.

14. Plaintiff has expended substantial time, money, and other resources advertising, promoting, and marketing Plaintiff's Products. Plaintiff's Products have also been the subject of extensive unsolicited publicity due to the longstanding success of the Metallica brand. As a result, products bearing Plaintiff's Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from Plaintiff. Plaintiff's Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with Plaintiff's Trademarks is of immeasurable value to Plaintiff.

    ***ANSWER:*** Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 14, and therefore deny those allegations.

15. Plaintiff's Products are sold only by Plaintiff or through authorized licensees and are recognized by the public as being exclusively associated with the Metallica brand.

    ***ANSWER:*** Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 15, and therefore deny those allegations.

16. Defendants are unknown individuals and business entities who own and/or operate one or more of the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b).

    ***ANSWER:*** Defendants deny the allegations in paragraph 16 except that Defendants each

operate an Internet store and Defendants reside in the People's Republic of China.

17. On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

*ANSWER:* Defendants deny the allegations in paragraph 17 except that Defendants each operate an Internet store.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

18. The success of the Metallica brand has resulted in significant counterfeiting of Plaintiff's Trademarks. Because of this, Plaintiff has implemented an anti-counterfeiting program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like Alibaba Group Holding Ltd. ("Alibaba"), AliExpress.com ("AliExpress"), Amazon.com, Inc. ("Amazon"), eBay, Inc. ("eBay"), ecrater.com ("eCRATER"), Etsy, Inc. ("Etsy"), Pixels.com, LLC d/b/a Fine Art America ("Fine Art America") and Pixels.com ("Pixels"), Printerval.com ("Printerval"), Redbubble Limited ("Redbubble"), Spreadshirt, Inc. ("Spreadshirt"), WhaleCo, Inc. ("Temu"), Walmart, Inc. ("Walmart"), and Context Logic, Inc. d/b/a Wish.com ("Wish"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the

United States. According to a report prepared for The Buy Safe America Coalition, most counterfeit products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online counterfeiters. The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States, prepared by John Dunham & Associates (Exhibit 2).

*ANSWER:* Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 18, and therefore deny those allegations.

19. Because counterfeit products sold by offshore online counterfeiters do not enter normal retail distribution channels, the US economy lost an estimated 300,000 or more full-time jobs in the wholesale and retail sectors alone in 2020. Id. When accounting for lost jobs from suppliers that would serve these retail and wholesale establishments, and the lost jobs that would have been induced by employees re-spending their wages in the economy, the total economic impact resulting from the sale of counterfeit products was estimated to cost the United States economy over 650,000 full-time jobs that would have paid over $33.6 billion in wages and benefits. Id. Additionally, it is estimated that the importation of counterfeit goods costs the United States government nearly $7.2 billion in personal and business tax revenues in the same period. Id.

*ANSWER:* Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 19, and therefore deny those allegations.

20. Online marketplace platforms like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." Exhibit 3, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting

in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as Exhibit 4, and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and that "[t]he ability to rapidly proliferate third-party online marketplaces greatly complicates enforcement efforts, especially for intellectual property rights holders." Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by establishing multiple virtual storefronts. Exhibit 4 at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. Exhibit 4 at p. 39. Further, "[e]-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." Exhibit 3 at 186-187. Specifically, brand owners are forced to "suffer through a long and convoluted notice and takedown procedure only [for the counterfeit seller] to reappear under a new false name and address in short order." Id. at p. 161.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the allegations in paragraph 20, and therefore deny those allegations.

21. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, sell Unauthorized Products to residents of Illinois.

*ANSWER:* Defendants deny the allegations in paragraph 21 except that Defendants each operate an Internet store that are accessible by residents of Illinois, and Defendants accept U.S. dollars.

22. Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars in multiple ways, including via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish their stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use Plaintiff's Trademarks, and none of the Defendants are authorized retailers of Plaintiff's Products.

    *ANSWER:* Defendants deny the allegations in paragraph 22 except that Defendants each operate an Internet store, Defendants accept U.S. dollars, and Defendants have not entered into a licensing agreement with Plaintiff.

23. Many Defendants also deceive unknowing consumers by using Plaintiff's Trademarks within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to Plaintiff's Products. Other e-commerce stores operating under the Seller Aliases omit using Plaintiff's Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Plaintiff's Products.

    *ANSWER:* Defendants deny the allegations in paragraph 23.

11

24. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

    *ANSWER:* Defendants deny the allegations in paragraph 24.

25. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

    *ANSWER:* Defendants deny the allegations in paragraph 25.

26. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other common features, such as registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

    *ANSWER:* Defendants deny the allegations in paragraph 26.

27. E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators, like Defendants, of new intellectual property infringement lawsuits filed by brand owners, such as Plaintiff, and recommend that e- commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

    *ANSWER:* Defendants deny the allegations in paragraph 27.

28. Counterfeiters such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to offshore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

    *ANSWER:* Defendants deny the allegations in paragraph 28.

29. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff have, jointly and severally, knowingly and willfully used and continue to use Plaintiff's Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

    *ANSWER:* Defendants deny the allegations in paragraph 29.

30. Defendants' unauthorized use of Plaintiff's Trademarks in connection with the advertising, distribution, offering for sale, and sale of Unauthorized Products, including the sale of Unauthorized Products into the United States, including Illinois, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

*ANSWER:* Defendants deny the allegations in paragraph 30.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

31. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

    *ANSWER:* Defendants incorporate their answers set forth in the preceding paragraphs as if fully set forth herein.

32. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of Plaintiff's Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. Plaintiff's Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from products offered, sold, or marketed under Plaintiff's Trademarks.

    *ANSWER:* Defendants deny the allegations in paragraph 32 except that this is an action alleging trademark infringement.

33. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of Plaintiff's Trademarks without Plaintiff's permission.

    *ANSWER:* Defendants deny the allegations in paragraph 33 except that Defendant

luaulooks has used the word 'Metallica' in their online listing, and Defendants' respective products incorporate the word 'Metallica'.

34. Plaintiff is the owner of Plaintiff's Trademarks. Plaintiff's United States registrations for Plaintiff's Trademarks are in full force and effect. On information and belief, Defendants have knowledge of Plaintiff's rights in Plaintiff's Trademarks and are willfully infringing and intentionally using infringing and counterfeit versions of Plaintiff's Trademarks. Defendants' willful, intentional, and unauthorized use of Plaintiff's Trademarks is likely to cause, and is causing, confusion, mistake, and deception as to the origin and quality of the Unauthorized Products among the general public.

    *ANSWER:* Defendants lack knowledge or information sufficient to form a belief as to the ownership and validity of Plaintiff's Trademarks, and therefore deny those allegations. Defendants deny the remaining allegations in paragraph 34.

35. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

    *ANSWER:* Defendants deny the allegations in paragraph 35.

36. Plaintiff has no adequate remedy at law and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of Plaintiff's Trademarks.

    *ANSWER:* Defendants deny the allegations in paragraph 36.

37. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use of advertisement, promotion, offering to sell, and/or sale of Unauthorized Products.

    *ANSWER:* Defendants deny the allegations in paragraph 37.

15

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

38. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs..

    *ANSWER:* Defendants incorporate their answers set forth in the preceding paragraphs as if fully set forth herein.

39. Defendants' promotion, marketing, offering for sale, and sale of Unauthorized Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Unauthorized Products by Plaintiff.

    *ANSWER:* Defendants deny the allegations in paragraph 39.

40. By using Plaintiff's Trademarks in connection with the offering for sale and/or sale of Unauthorized Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Unauthorized Products.

    *ANSWER:* Defendants deny the allegations in paragraph 40.

41. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Unauthorized Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

    *ANSWER:* Defendants deny the allegations in paragraph 41.

42. Plaintiff has no adequate remedy at law and will continue to suffer irreparable harm to its reputation and the associated goodwill of the Metallica brand if Defendants' actions are not enjoined.

    *ANSWER:* Defendants deny the allegations in paragraph 42.

Dated: January 24, 2024                                            Respectfully submitted,

                                                                        /s/ Ge (Linda) Lei
Getech Law LLC
203 N LaSalle Street
Chicago, Illinois 60601
T: (312) 888 – 6633
Linda.lei@getechlaw.com
*Attorney for viwishs and luaulooks*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of January, 2024, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ Ge (Linda) Lei
Ge (Linda) Lei